# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHRYN CARROLL, | : | No. 3:16cv1509 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
|     v. | : | |
| | : | |
| COMPREHENSIVE WOMEN'S | : | |
| HEALTH SERVICES; | : | |
| DAVID KREWSON; and | : | |
| ROBERT ZIMMERMAN, | : | |
|     Defendants | : | |

······································································································

## **MEMORANDUM**

Before the court is defendants' motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. The parties have briefed their positions and the motion is ripe for disposition.

**Background**

This employment discrimination matter arises from the decision of Defendants, Comprehensive Women's Health Services, Dr. David Krewson, and Dr. Robert Zimmerman (hereinafter "defendants," collectively, or "CWHS," "Defendant Krewson," or "Defendant Zimmerman") to terminate Plaintiff Kathryn Carroll's (hereinafter "plaintiff") employment one day after she requested medical leave for genetic cancer testing and after previously taking leave for cancer treatment. Plaintiff claims defendant terminated her employment in contravention of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (hereinafter

"ADA"), Pennsylvania's Human Relations Act, 43 PA. CONS. STAT. ANN. § 951, et seq. (hereinafter "PHRA"), and the Genetic Information Non-Discrimination Act, 42 U.S.C. § 2000ff, et seq. (hereinafter "GINA").

Plaintiff worked in defendants' medical records department from November 2000 until her termination on February 6, 2013. (Doc. 35 ¶ 3). She claims to have had no disciplinary issues for thirteen years. (Doc. 34 ¶¶ 11-12). While employed with defendants in November 2011, plaintiff received a breast cancer diagnosis. (Doc. 35 ¶ 12). She informed her office manager, Judy Nagle (hereinafter "Nagle"), and was granted time off work for cancer treatment. (Id. ¶ 9, 11). Plaintiff received pervasive and protracted cancer treatment: a right breast mastectomy, 2011, requiring three weeks off work and resulting in lifting restrictions (Id. ¶¶ 13, 16); a left breast mastectomy, February 2012, requiring three weeks off work (Id. ¶¶ 18, 19); fitment for breast implants over a three-week period requiring no time off work; a procedure to place the breast implants, August 2012, requiring three weeks off work; and genetic testing to determine whether she has a cancer gene, February 5, 2013, requiring one day off work.

Thus, plaintiff's cancer treatments required more than nine weeks off work. Plaintiff was candid about defendants providing all the leave she requested for cancer treatment and procedures. (Id. ¶ 27).

Upon plaintiff's return to work the day after her genetic testing, a patient's chart was missing. (Id. ¶ 34). Plaintiff responded by looking for the chart after she received a phone call from the clinical staff advising the medical records department that a patient was there to see Defendant Krewson and that patient's chart was missing. (Id. ¶ 35). It was common at CWHS to find missing charts in one of the doctors' offices. (Id. ¶ 39). Plaintiff searched Dr. Timothy Grube's (Defendants Krewson and Zimmerman's former partner) office but did not find the missing chart. (Id. ¶ 40-42). Plaintiff's co-workers assisted in the search but did not search Dr. Grube's office. (Id. ¶ 44).

Nagle joined the search and located the missing chart in Dr. Grube's office "fairly quickly" among other patient charts on his credenza (Id. ¶ 47). Nagle then summoned plaintiff to Grube's office. Nagle testified that she wanted to show plaintiff exactly where the chart was found. Plaintiff replied that she had looked for the file in the place where it was found and did not notice it there. Nagle further testified that she was frustrated because the chart was "right there" in the first place she looked, which was where plaintiff should have expected it to be. (Id. ¶¶ 40-50). Nagle also testified that this problem [of Nagle having to become involved in searching for missing charts] was specifically occurring with regard to plaintiff. (Id. ¶ 50-52). Plaintiff denies this allegation. (Doc. 38 ¶ 52) (See Doc. 35 ¶ 39).

3

Nagle told plaintiff she was tired of having to do her job, that patient files were not supposed to "go missing" and that knowing where the physical files were located was important because the files were not digitalized or computerized at that time (Doc. 35 ¶ 53, 55). Nagle testified that plaintiff responded by saying "find someone else to do the job" and then walked away.[1] Nagle claims to have called out plaintiff's name but plaintiff continued to walk away from her. Nagle further claims plaintiff displayed a poor attitude and body language. (Id. ¶¶ 55-58). Plaintiff disputes Nagle's testimony. (See Doc. 38 ¶¶ 56-58).

At the end of the work day plaintiff was called into a conference room. Present were Nagle and Defendants Krewson and Zimmerman. (Doc. 35 ¶ 64). Nagle was still upset when plaintiff entered the conference room. (Id. ¶ 66). She did not, however, possess authority to terminate employee. Only Defendants Krewson and Zimmerman could do that. (Id. ¶ 75). Plaintiff was told she was being terminated due to insubordination that occurred earlier that day. (Id. ¶ 76) (See Doc. 38 ¶ 76). Allegedly, Nagle immediately escorted plaintiff out of the building and directed her not to say anything to the staff. (Doc 26 ¶ 29).

---

[1] This is the core of the defense in this case: whether plaintiff was fired for acting insubordinately through her words, attitude, and body language. This also constitutes the principal among several genuine issues of material fact for the jury to decide.

4

In response to her termination, plaintiff filed a complaint (Doc. 1) and later a first amended complaint (Doc. 9). The first amended complaint asserts three claims. Count I avers defendant discriminated against the plaintiff because of her disability in violation of the ADA. (Id. ¶¶ 36-44). Count II states a disability discrimination claim against the defendant under the PHRA (Id. ¶¶ 45-48). Count III asserts a claim under GINA, 42 U.S.C. § 2000ff, et seq.

On November 21, 2016, plaintiff filed a motion (Doc. 15) for leave to file a second amended complaint, seeking to name Drs. Krewson and Zimmerman as individual defendants under Count II – plaintiff's PHRA claim. We granted the motion in part and denied it in part. (See Doc. 19).[2] Plaintiff's second amended complaint (Doc. 26) was filed on January 20, 2017. Two counts were added to the second amended complaint. Count IV alleges violation of the aiding and abetting provision of the PHRA by Defendant Krewson. Count V alleges violation of the aiding and abetting provision of the PHRA by Defendant Zimmerman.

All defendants filed the instant motion for summary judgment (Doc. 34) on June 1, 2017 regarding all four counts, bringing the case to its current posture. The parties have briefed their positions and the motion is ripe for disposition.

---

[2] See FED. R. CIV. P. 15(a)(1)(B) (providing that "a party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . . ."); see also FED. R. CIV. P. 6(d) (stating that where service is made by electronic means under FED. R. CIV. P. 5(b)(2)(E), 3 (three) days are added onto the computation of time).

**Jurisdiction**

As this case is brought pursuant to the ADA and GINA for unlawful employment discrimination, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

**Standard of review**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw

Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden then shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

"In employment discrimination cases, the summary judgment standard 'is applied with added rigor' because 'intent and credibility are crucial issues.'" Walden v. St. Gobain Corp., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) quoting Stewart v. Rutgers Univ., 120 F.3d 426, 431 (3d Cir. 1997). "Employment discrimination cases center around a single question: why did the employer take an adverse employment action against plaintiff? Because this 'is clearly a factual question,' Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 899 (3d Cir. 1987),

7

summary judgment is in fact rarely appropriate in this type of case. Simply 'by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.' Id. See Sempier v. Johnson & Higgins, 45 F.3d 724, 732-33 (3d Cir. 1995) (cases in which plaintiff attacks employer's stated reasons for adverse employment action 'must be resolved by a jury and cannot be resolved on summary judgment')." Marzano v. Comp. Sci. Corp., 91 F.3d 497, 509-510 (3d Cir. 1996).

Pennsylvania courts interpret the PHRA in the same manner as its federal counterparts such as Title VII. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) ("Pennsylvania courts...generally interpret the PHRA in accord with its federal counterparts...").

**Discussion**

**Count I- ADA**

As noted above, Count I of the second amended complaint alleges an ADA cause of action. Employers cannot discriminate against qualified people with a disability, *because of* the disability. 42 U.S.C. § 12112(a). The elements of a discrimination case under the ADA are: (1) plaintiff is disabled within the meaning of the ADA; (2) plaintiff is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3)

8

plaintiff has suffered an otherwise adverse employment decision as a result of discrimination. Wilmore v. American Atelier, Inc., 72 F. Supp. 526, 528 (E.D. Pa. 1999), citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999); Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998). Defendants attack the first and third elements of the ADA claim. We will discuss them separately.[3]

### A. Disability

Defendants argue against the first element by asserting that plaintiff's cancer does not constitute a disability without a showing of significant limitation on her major life activities because her cancer is in remission. (Doc. 36 at 8).

Prior to the enactment of the Americans with Disabilities Act Amendments Act (hereinafter "ADA amendments") of 2008, defendants might have had an argument, but not anymore. Effective January 1, 2009, the ADA amendments define major life activities to include "normal cell growth." 42 U.S.C. § 12102 (2)(A). It is axiomatic that cancer literally is abnormal cell growth. Further, the ADA amendments clarified that an episodic impairment or one that is in remission is a disability if, when active, it would substantially limit a major life activity. 42 U.S.C. § 12102(4)(D). Cancer qualifies as a disability. See Showers

---

[3] Defendants do not challenge the second element of the ADA claim, that plaintiff was qualified to do her job and could perform the essential functions of her position as medical records clerk. Notably, she had been at her job for thirteen years.

9

v. Endoscopy Center of Central Pa., 58 F. Supp. 3d 446, 460 (M.D. Pa. 2014). Thus, plaintiff has direct evidence on the first element of her ADA claim.

**B. Adverse employment decision resulting from discrimination**

Defendants attack the third element of the ADA claim by arguing that when Defendants Zimmerman and Krewson decided to terminate plaintiff, the two did not know of plaintiff's cancer *treatment*, genetic testing, or accommodations she required, and therefore in defendants' view, it is not possible for them to have fired her *because of* her disability. (Doc. 36 at 4). It is undisputed that plaintiff never personally told Defendants Zimmerman or Krewson about her cancer while she was in their employ. (Id.)

Plaintiff argues Defendants Zimmerman and Krewson's testimony that they did not know plaintiff had cancer at the time they fired her is neither undisputed nor established as a matter of law. Instead, it is a question for the jury to decide and therefore a genuine issue of material fact exists regarding the first element of a claim under the ADA. We agree this case is simply plaintiff's word against Nagle's – a matter of witness credibility.

A reasonable jury could find a profusion of undisputed facts calling into question the truthfulness of Defendants Zimmerman and Krewson's contention that they didn't know of plaintiff's cancer. Plaintiff informed thirteen employees and Dr. Grube that she had cancer. (Doc. 38 ¶ 1). Nagle told "Arlene," another

employee, that plaintiff had cancer. (Doc. 38 ¶ 2). During the time frame of the relevant events CWHS had only 40-50 employees. Other than Defendants Zimmerman and Krewson, all employees were female except one. (Doc. 38 ¶¶ 3, 4). Defendant Zimmerman knew by name everyone who worked at CWHS. (Doc. 38 ¶ 5). Statistically one in eight women will develop breast cancer. (Doc. 35 ¶ 19). Plaintiff took more than twelve weeks medical leave from work within one year. (Doc. 35 ¶¶ 14, 19, 21, 24, 28). Thus, cogent arguments can be made, under the totality of the circumstances, that Defendants Zimmerman and Krewson would have known plaintiff was absent from work due to cancer treatment.

Hypothetically, a reasonable jury could believe that Nagle, having "had it" with plaintiff taking time off for medical reasons, wanted to terminate plaintiff because of her disability but knew that doing so would subject CWHS to civil liability for discrimination. Plaintiff's inability to find a patient chart that had gone missing, followed by a verbal spat with Nagle, could have provided Nagle with a convenient pretext for terminating plaintiff for poor work performance, and insubordination for "talking back." When combined with plaintiff's thirteen years of employment, CWHC's progressive discipline protocol where counseling is the first step (<u>see</u> Doc. 37 at 7), which was not used in plaintiff's case, that plaintiff had not been disciplined for insubordination previously, and plaintiff's testimony

11

that she did look in the same place Nagle found the patient chart, multiple genuine issues of material fact present themselves in this simple hypothetical scenario.

Defendants further argue that plaintiff is just speculating that Defendants Zimmerman and Krewson knew of her cancer. We disagree. We find plaintiff has raised a genuine issue of material fact whether the third element of discrimination under her ADA claim has been satisfied. Thus we will not find defendants' contradicted witness deposition testimony as an established matter of law, for to do so would constitute a credibility determination on our part.

For the foregoing reasons summary judgment on Count I will be denied.

**Count II- PHRA**

Pennsylvania courts interpret the PHRA in the same manner as its federal counterparts such as Title VII. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996) ("Pennsylvania courts...generally interpret the PHRA in accord with its federal counterparts..."). Thus, PHRA violations are subject to the same analysis as ADA and Title VII claims, and no separate analysis is required. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999); Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84.

> While the PHRA's definition of disability largely tracked the ADA's prior to the [ADA amendments], Pennsylvania has not similarly expanded the meaning of disability under the PHRA. Rubano v. Farrell Area Sch.

> Dist., 991 F. Supp.2d 678, 689 n. 7 (W.D. Pa. 2014). In disability discrimination cases predicated on conduct that occurred after January 1, 2009 where disability status is at issue, therefore, courts in this circuit have applied the pre-ADAAA standard to PHRA claims. Id. (internal citations omitted); Rocco v. Gordon Food Serv., 998 F. Supp.2d 422, 428 (W.D. Pa. 2014).

Showers at 461-462.

The ADA amendment's construction rule regarding episodic impairments or those in remission has no counterpart in the PHRA. Id. at 462, citing 43 PA. CONS. STAT. § 954 (p.1). Thus, defendants are correct in arguing that "cancer does not, in and of itself, entitle [plaintiff] to protection under the PHRA…" (Doc. 36 at 21). The question then boils down to whether plaintiff has evidence of a disability that a reasonable jury could conclude substantially limited any major life activity at the time she was fired.

Therefore, the elements of plaintiff's claim under the PHRA are: 1) plaintiff is a disabled person within the meaning of the ADA prior to the 2008 ADA amendments; 2) plaintiff is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) plaintiff has suffered an otherwise adverse employment decision as a result of discrimination. Wilmore, 72 F. Supp. at 528, citing Taylor, 184 F.3d at 306; Gaul 134 F.3d at 580. Prior to the ADA amendments, the Supreme Court interpreted the definition of a disability as set forth in Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002) (superseded by statute, 42 U.S.C. § 12102 in 2009), holding

that in order for an individual to be disabled, the individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.

Plaintiff testified that her doctor diagnosed her with anxiety and depression, and prescribed medication. (Doc. 38-1 at 54). Plaintiff claims profound symptoms accompany her anxiety including "loss of interest in everything, including sex, and being with family and friends." (Id. at 55). She claims to be withdrawn and worried constantly that her cancer will reoccur. (Id.) Her parents both had cancer, causing her to focus on what they went through including financial devastation. (Id.) She doesn't want her children and grandchildren to see her go through the same thing. (Id.) Whether she will be capable of working worries her; her family relies on her to pay bills and her inability to work would burden her husband. Id. Side-effects of Alprazolam, the anti-anxiety medication, when she takes it as prescribed, include headaches and nausea. Id. As a result, sometimes she does not take it. Id.

The record, however, contains no evidence that plaintiff was fired *because of* her anxiety and depression. Thus, even though a jury might find that these conditions substantially limit her major life activities, plaintiff has not established a prima facie case under the PHRA.

In view of the foregoing, summary judgment on Count II will be granted.[4]

**Count III- GINA**

Next defendants move for summary judgment on plaintiff's GINA claim. Under GINA's provision against "[d]iscrimination based on genetic information," 42 U.S.C. § 2000ff-1(a), "[i]t shall be an unlawful employment practice for an employer—"

> (1) to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee; or
> (2) to limit, segregate, or classify the employees of the employer in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee, because of genetic information with respect to the employee.

Section 2000ff (4) (A) defines "genetic information" as "information about— (i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." We therefore "review the complaint to determine whether Plaintiff has pleaded and plausibly supported, at least, (1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3)

---

[4] Because we find plaintiff has no PHRA claim, summary judgment on Counts IV and V- "Aiding and Abetting" PHRA provision against Defendants Krewson and Zimmerman, will be granted, as well.

15

because of information from Plaintiff's genetic tests." Leone v. North Jersey Ortho Specialists, P.A., Civil Action No. 11–3957 (ES) 2012 WL 1535198 *5 (D. New Jersey Apr. 27, 2012).

The first element is undisputed – plaintiff was an employee. Defendants contend plaintiff cannot satisfy the second element simply because of the timeline involved: plaintiff requested leave for February 5, 2013 to undergo genetic testing to see if she had "a cancer gene."[5] Doc. (35 ¶ 28). She was fired on February 6, 2013. She did not receive her genetic testing results until February 19, 2013 (Doc. 35 ¶ 31). Those results revealed that plaintiff does not have a "cancer gene." (Doc. 35 ¶ 32).

We agree with defendants and conclude that plaintiff could not have been fired *because of information from her genetic tests* because the results of those tests were not yet known at the time she was fired. Therefore, we will grant summary judgment in favor of defendants on Count III, plaintiff's GINA claim.

---

[5] Genetic testing looks for specific inherited changes (mutations) in a person's chromosomes, genes, or proteins. Genetic mutations can have harmful, beneficial, neutral (no effect), or uncertain effects on health. Mutations that are harmful may increase a person's chance, or risk, of developing a disease such as cancer. Overall, inherited mutations are thought to play a role in about 5 to 10 percent of all cancers. https://www.cancer.gov/about-cancer/causes-[continued] prevention/genetics/genetic-testing-fact-sheet#q1 (Accessed September 27, 2017).

16

**Conclusion**

After a careful review, we will grant in part and deny in part defendants' motion for summary judgment. An appropriate order follows.

**Date: September 27, 2017**         **s/ James M. Munley**
                                     **JUDGE JAMES M. MUNLEY**
                                     **United States District Court**